Van Vorst, J.
This is an action brought by the plaintiff, as assignee of a contract for its specific performance.
The contract was made and executed by William H. Platt and' his two brothers, Spencer and Nathan C., as executors of the last will and testament of their father, Nathan C. Platt, deceased.
The contract, by its terms, purported to assign to William R. Martin, an attorney and counselor at law, the one equal half part of all the claim and demand of the the executors against George W. Platt, and of an interlocutory judgment at the date of the contract, recovered against the said George W. Platt, in an action pending against him in favor of the executors and prosecuted by Martin, as their attorney.
The instrument purported also to assign the property covered by the judgment.
The consideration of this assignment was services already rendered, and which might thereafter be rendered in such action, which had been theretofore brought by the executors to set aside conveyances of real and personal property, made by their father, Nathan C. Platt, to George W. Platt, and in such other suits or proceedings as might be instituted by the executors, to recover the property covered by such transfers,
The consideration for the assignment to Martin by the executors was further enlarged by a statement in the contract, describing the difficulty of the case, the labor William R. Martin had performed, the money he had expended and must continue to perform and expend, and “ the measure in which the recovery must depend on his knowledge, skill and exertions,” and the confidence of the executors in his faithfulness and ability.
The contract also recited that the compensation fixed by it was “ for his services, and the services of such counsel as he has engaged, or may hereafter engage, in the case,” and was to be one-half of the whole recovery against George W. Platt.
The services and engagements of Martin were to be continued until “ the termination of controversy.”
This contract bears date the 27th day of December, 1878. The principal action had been commenced in the year 1867, was tried at special term in 1872, and a decision had been rendered in favor of the plaintiffs, adjudging the transfers made by Nathan C. Platt to George W. Platt to be fraudulent and void. At the date of the contract, an appeal from the interlocutory judgment at special term, to the general term, was pending. This judgment was in 1873 affirmed by the general term, and afterwards in the year 1874, by the court of appeals.
A reference as to the accounts of the personal estate, and of the rents and profits of the real estate, ordered by the interlocutory judgment, continued thereafter through several years, and down to the year 1880, and was earnestly contested. Several *287 reports from the referee were during that period made, repeated arguments were had upon motions and appeals, some of which were of great importance. All these legal proceedings were conducted by William It. Martin as the plaintiff’s attorney and counsel, and by such other counsel as Martin employed.
Final judgment was recovered in the action in 1881, in this court, which was affirmed in the court of appeals, in the year 1884, and subsequent proceedings were had under the judgment down to 1886.
Pending the proceedings and in the month of September, 1875, the contract in question was assigned, or attempted to be, by William R. Martin, to his father Runyon W. Martin.
No notice of this assignment was given to the executors.
On the first day of March, 1879, Runyon W. Martin assigned the contract to Jacob F. Wyckoff. In the negotiation for tins assignment it does not appear that Runyon W. Martin took any part. It was conducted by William R. Martin personally. This assignment was made to secure the sum of two thousand dollars, borrowed by William R. Martin of Wyckoff, for his own needs and use.
Notwithstanding the assignment theretofore made to Wyckoff, Runyon W. Martin, on the 3d day of April, 1879, executed another assignment of this contract, to his son Edwin N. Martin, the plaintiff in this action.
There is some contention as to when, if ever, this assignment was delivered to the assignee, Edwin N. Martin.
Runyon W. Martin died in 1879.
Proof of the execution by a subscribing witness was not made until May, 1886.
Where that instrument remained during all these years does not appear; certainly not in the possession or under the actual control of the plaintiff.
The plaintiff was subpoenaed, called and examined as a witness on the behalf of the defendants upon the trial of this action. The substance of his testimony was that he never saw the assignment, or knew anything about it until January, 1886. That it was then shown to him by his brother, Howard N. Martin, who explained to him that through that paper he was put in the position of plaintiff in an action. That he swore to the complaint at the request of Howard N. Martin, and did not know the real purpose of this action. Of the subsequent transfers of this contract by Runyon W. Martin, the executors were ignorant, as they were of the assignment to him.
The assignment to the plaintiff was first disclosed through the complaint in this action.
These facts are sufficient to indicate the grounds upon which the plaintiff’s demand for a specific performance of the contract above referred to cannot be granted by this court.
*288 There are other faets which will be hereafter referred to, as they bear upon particular questions which are important to be considered.
The granting of relief of the nature of that invoked in this action is not a matter of course in all cases, nor is a matter of absolute right to either party to a contract.
It is a matter resting in the discretion of the court to be exercised upon a consideration of all the circumstances of each particular case.
This discretion, it is true, should not be arbitrarily exercised, and only in the interest of justice and equity.
Where a compensation for the breach of a contract, or for its enforcement, is adequate and practicable, the aggrieved party is ordinarily turned over to his action for damages.
It is not needful here to state the cases which are an exception to this rule, the present does not come within the category of the excepted ones.
The object sought to be reached in this action is money — the proceeds of real estate.
This real estate was sold by the decree of this court in an action of partition.
This real estate, it is true, was included in the transfer to George W. Platt, which had been in the executors’ action adjudged void.
But it has been decided that the children of Nathan C Platt took the same as devisees under his last will and testament (Cook agt. Platt, 98 N. Y., 35). The executors, as .such, had nothing to do with the testator’s real estate under his will. They had, indeed, a power of sale for the purposes of the will, but it was never exercised.'
In the action of partition, this real estate being incapable of partition, was directed to be sold and the proceeds to be divided among the children of the testator, who had been adjudged to be seized thereof as tenants in common. The terms of the contract in question do not touch the real estate. Although the contract professes to assign the interlocutory judgment already recovered and the property therein described, it could not in any form operate as a transfer of the real estate or any interest therein, the title to which, under the will and by force of the judgment itself, was not in the executors, but in the devisees.
In the action of Platt against Platt in this court', being .the action for the partition of the lands among the devisees, it was claimed on the behalf of one of the defendants, through William R. Martin as his attorney and counsel, that by virtue of the contract or agreement in question, he had an interest and estate in the lands, and was a necessary party to the action.
Justice Beach, before'whom the action was tried, declared otherwise, and refused to receive the contract in evidence; his *289 language was tlie ruling excluding “ The agreement between William H. Platt, Spencer C. Platt and Nathan C, Platt, as executors of Nathan C. Platt, deceased, and William R. Martin, still seems correct. The executors had no title to the realty, and I cannot see .how under such circumstances it was possible for them to convey to Martin any interest therein or lien upon it. The contract is not under seal, and contains no words of grant. There are a few exceptional cases where an executor or trustee may create a lien or charge upon the estate, but this agreement does not make' one.”
It was decided that William R. Martin was hot a necessary party to the action.
But notwithstanding that the learned Justice so decided, by his interlocutory judgment, he ordered that it should be referred to a referee appointed .by him, amongst other things, to ascertain whether any creditor not a party to the action had a lien upon, the whole of the lands .or upon the interests of the several parties thereto, and the amount of such lien, and also to ascertain and determine whether there is any creditor not a party to the action who had a lien upon the. undivided share or interest of any parties to the action, and the amount of such lien.
It was decided in the superior court, in Cooke against Platt, in which this agreement was considered, that it was beyond the powers of the executors to make such a contract so as to charge the estate of Nathan C. Platt, and that it was ineffectual, at least in so far as it was not assented to by any one interested in the estate. It was adjudged, to be absolutely void as to Mrs. Cooke, a sister of William H. Platt, who knew nothing of the making or existence of the contract, and had not assented to if.
See manuscript opinion of Sedgwick, C. J., delivered in that cause. , ■
Cooke against Platt is not, however, any authority for deciding here that the interests of the several executors in the estate of their father, as individuals, is impressed with the lien or obligations of the agreement, or that they, as individuals, could be compelled by'the judgment of a court of equity, specifically to perform it by conveying to William R. Martin, or to his assignee, the one-half part of their several interests in the lands in question as an approximate satisfaction of a contract, for the one-half interest of the executors as such, in all the property the subject of the litigations referred to in the contract.
In executing the agreement in question they did not contract with their attorney, who had himself prepared the instrument in a form to suit himself, otherwise than as executors. Having been prepared by himself and submitted by him to the executors for their approval and signature, the presumption is that this agreement asserts his claim and the liability to be assumed by each, as he desired it to be understood, and in the end to be enforced.
*290 If the property of Mrs. Cooke, the sister of the executors and one of the devisees of the real estate, is not chargeable with this agreement — and that it is not, under the judgment of the superior court, must he accepted here — then the contract, according to its terms, could not in any view be specifically performed.
For by its language one-half the judgment and the property therein described is devoted to the payment of the professional services of Mr. Martin. '
It would not be within the power of the executors, as individuals even, to execute this contract, according to its terms, by a conveyance of one-half of the property, unless they should be compelled to make up Mrs. Cooke’s proportion, which would -be inequitable, and a court of equity will not compel specific performance unless.it can execute the whole contract.
But, as already suggested, the land itself, the property claimed do have been specifically recovered, and which was included in the judgment assigned to Martin, has been sold under the decree of this court, and the proceeds, in money, have been directed to be divided amongst the devisees according to their respective interests.
This action was not commenced until after such judgment and ■sale in the partition suit. To affect the land specifically earlier .action was needed. What is therefore sought to be reached in this action is not the specific property covered by the contract, but money.
If the assignee of Mr. Martin has any claim to money, it is ■ not to be enforced through an action for the specific perform-ance of the contract. No action in equity is needed. The rem-edy at law is ample, and the plaintiff’s claim, if well founded, can be fully satisfied by a judgment for damages, and if he has ■any specific lien on these moneys he can assert it in the action-for partition, under the permission to creditors having such lien, ■to present same to the referee who had made the sale.
There is, however, this specific objection to the granting of this relief growing out of the fact that there is a want of mutuality with respect to the obligations of this contract and of their enforcement in equity. “ For a contract to be specifically enforced by the court it must be mutual. That is to say, such that fit might, at the time it was entered into, have been enforced by either of the parties against the other of them.” Fry on Specific Performance, Sec. 286.
For when, from the nature of the contract, or any other cause, -the contract is incapable of being enforced against one party that party is incapable of enforcing it against the other. Idem.
“ And as contracts of hiring and service are always of a confidential character, and cannot, therefore, be enforced against *291 an unwilling party, with any bope of ultimate success, courts of equity, as a general rule, now refuse to decree specific performance of them.” (Wait’s Actions and Defenses. Vol. 5, pp. 767, 768.)
This is in no sense a technical rule, but its application in the cases named is certainly agreeable to equity. The services to be rendered by Mr. Martin to entitle Mm to the compensation mentioned in the contract were, in their nature, personal, depending upon his peculiar knowledge, skill and power to accomplish. The rendering of these services by Mr. Martin in the prosecution of one or more actions, the employment of this knowledge and skill to the best advantage of his clients, and the exercise of his judgment in the management of the litigations and in the employment of additional counsel are obligations of a nature not to be specifically and satisfactorily enforced by the judgment of the court.
That Martin had partly performed the work when the contract was entered into does not answer the objection. The engagement was indivisible. The litigations were expected to continue, as they did, for man3 years, and the sendees and skill were to be rendered and exercised until the end.
Mr. Martin did not himself sign the contract, nor place himself under any direct covenant or agreement to render the services or expend the money. Had he thrown up the case at any moment I fail to see how he could have been compelled by the judgment of this court to go on and render the services, apply the knowledge and skill and make the expenditures of money called for by the agreement. And it is to be borne in mind that the test in this regard is was the contract “ at the time it was entered into” such a one as equity would or could enforce. Fry on Specific Performance, page 62, and note; Haight v. Badgley, 15 Barb. Sup. Ct., 501.
In addition to these objections to the specific relief sought, growing out of the nature of the contract, is the further one that the contract is not assignable.
The general rule, doubtless, is that the benefit of an agreement may be assigned in equity, and that the assignee can enforce specific performance of contracts of wMch courts of equity would decree performance at the suit of the assignor.
The exception to tMs rule is found in cases of contracts for personal services, where learning, skill, special knowledge and confidence are involved. Where such skilled services are tojbé rendered, they can only be performed by the contracting party Mmself, and the benefits of such contracts are incapable of being assigned. Fry on Specific Performance, Sec. 126. Devlin v. The Mayor, etc., 63 N. Y., 8.
Sec. 1910 of the Code, authorizes the assignment of a claim or demand, but not of an executory contract, for personal services.
*292 Had tbe assignment in question been made by Mr. Martin after all the work had been done, and the actions had been prosecuted to a conclusion, and his claim for services perfected, a different question might a,rise. But in determining this question we are to consider when this assignment was made, and pass upon its potency and effect at that time.
As has been seen, the assignment to Runyon W. Martin was made in 1873, midway in the litigations, which were continued for more than ten years thereafter.
The assignment to him was of the contract itself.
Such assignment must have operated as a dissolution of the confidential relation existing between the executors of Nathan C. Platt’s will and their attorney and counsel. Had the fact of such assignment been disclosed to the executors at the time, they would have been justified in so deciding.
The executors were not obliged to take the assignee in the place of Mr. Martin.
If the assignment was honestly made and Martin had truly parted with all his interest in the contract, its effect upon the character of his work, and efficiency thereafter, would have been severely felt to the injury of his clients.
For we cannot think that any lawyer or other person, under obligation to render important professional services, requiring knowledge and skill, would prosecute his work for years, with the interest and skill the work required, when he had in advance transferred to others all the compensation he was to receive for his services.
The fact that Martin kept the making of such assignment concealed from the executors, and continued to act and render services as attorney and counsel, until the executors had been removed from their position of trust, and Martin had been himself displaced as the attorney for the substituted plaintiff in that action, cannot change the character or effect of the transaction yof which the assignment was a part, at the time it was accomplished, or make it more favorable to the assignor or assignee than if the facts were known at the time to all concerned.
Such being the case, a court of equity could not, where its discretion is to be exercised according to all the facts and circumstances of the case, award to the plaintiff specific performance, even though he were a bona fide assignee of the contract.
But the facts of the case, appearing in evidence, do not justify a conclusion then that he is anything more than a plaintiff in name only. He is not the real party in interest.
The contract was assigned to him without his knowledge, and there is no evidence of an actual delivery to him of the instrument.
In an action in a court of law for legal redress, the possession of the assignment by the assignee would clothe him with author *293 ity and right to sue, and no inquiry as to the consideration of the assignment would be allowed except as to creditors injured thereby. Sheriden agt. The Mayor, 68 N. Y., 30.
But this is a suit on the equity side of the court," where there is not an absolute right to the remedy invoked.
The facts truly demonstrate that the real party ip interest is William R. Martin, notwithstanding the execution of the assignment to Runyon W. Martin, and from him to Wyckoff and the plaintiff.
Under such a state of facts and circumstances, this court should hesitate before ordering the contract to be specifically performed, were there no other objection to the remedy.
The plaintiff, if he has any title to maintain an action, should be left to his legal remedy, for he does not come into court under circumstances to warrant the exercise of a discretionary judgment in his favor.
That Martin regarded himself as the real owner, and as the party in interest under the contract, notwithstanding the assignments thereof, is shown by many facts.
For during a considerable period, long after the date of such assignments, and during the litigations referred to in the contracts, and as proceeds thereof, the assignor, W. R. Martin, received and appropriated to his own use large sums of money.
In the action brought by Mrs. Cooke against her brothers, the executors under her father’s will and William R. Martin, and in which the executors were removed and Martin was forbidden further to interfere with the property and assets of the estate, he interposed this contract, notwithstanding the alleged assignments thereof, as the foundation of his claim to receive and retain these moneys.
As already stated, the superior court rejected such contract, upon the ground of its invalidity ; and fixed and determined the value of the services of W. R. Martin in the action at $40,000, and rendered a judgment against him for the excess of moneys of the estate received by him over the value of his services in the action, for the sum of $20,000.
That judgment was affirmed by the general term of the superior court, and now stands unreversed, as the final decree of that Court.
Now, whilst that judgment may not be final and conclusive as to the present plaintiff, who was not a party to the action, as his supposed interest Avas undisclosed and unknown, the findings in that case do show that William R. Martin acted throughout without opposition from others as the real owner of the contract, and used it as ari authority and justification for the receipt and appropriation to his own use of the moneys and property of the estate to the amount of sixty thousand dollars.
That should be held to affect the rights of the plaintiff here.
*294 Where a court of equity is satisfied that the person prosecuting the suit is not the real owner of the cause of action, but is a nominal party only, it may properly deny equitable relief, which it has the' discretion to grant or withhold.
Other objections have been urged by the defendants’ counsel to the maintenance of this actiom — one is that the right to the relief sought has been lost through the misconduct of W. R. Martin during the progress of the litigation.
As the contract could only be performed by Martin personally, notwithstanding the assignment, it is obvious that the assignee must of necessity be visited with all the consequences of any breach of duty, or misconduct on his part, and of this the assignee cannot reasonably complain.
By the terms of the contract the large compensation secured to Martin was based upon considerations such as these: The case was difficult — the executors had confidence in the fidelity as well as the ability, knowledge arid skill of their attorney, upon which the “ measure of the recovery ” would greatly depend. The attorney was to continue his services until the end of the controversy, that must mean until all occasion for legal services, in the various suits, and ail their branches, was fully satisfied. The compensation fixed was further based not only upon the services he had already rendered and moneys he had expended, but upon such as he must continue to perform and expend, and also for the services of such counsel as he had engaged, or might engage, in the litigation. The misconduct on the part of Martin, of which complaint is made, is, not that he neglected his duty as a lawyer in the skillful and prudent management of the case, so long as it was under his control as the attorney for the plaintiff, but that during the pendency of the litigation he received to his own use large sums of money, rents and profits of the real estate in question, and other funds, whereas he was not entitled, under the contract in question, to any compensation, until the completion of the litigation; that he failed to pay the counsel engaged by himself for their services, as he had agreed to do, and. that the parties in interest have been obliged themselves to pay such counsel. Further, that he entered into an arrangement and combination with W. H. Platt, one of the executors, by which the latter received a larger portion of the moneys realized, in the course of 'the litigation, than the other devisees received, and that he kept the facts of such arrangement and excessive payments concealed from the other parties in interest.
The fact that Martin received and applied to his own use such large sums of money, the fruits of the litigation, long before its close, and omitted to pay the counsel engaged by himself, leaving the parties to bear this burden, must be taken into consideration with the fact that the compensation reserved to *295 tbe attorney, one-lialf tbe whole recovery was very large, and tbat such agreement was executed by tbe executors after a judgment of special term, on tbe merits, bad been recovered in their favor, when some reasonable idea of the amount of the recovery could be formed, and the extent of the compensation was based upon the consideration that the executors had no money or property to meet legal expenses, and that their attorney was to carry on the litigation and defray all its expenses, including fees to counsel with his own means, and was in fact to depend upon final success for any compensation whatever.
The complaint in this action itself alleges “ that at the time of the commencement of said action the said executors had in their hands no estate of their said testator. That the estate of their said testator was in the hands and possession of George W. Platt, from whom it was afterwards recovered as aforesaid. That they had no means to pay the necessary legal services to recover said estate.” Hence the agreement.
The'conduct of Martin in receiving these moneys to his own use, before the close of the litigations, and before his professional services were ended, and his omission to pay the counsel engaged by himself, was clearly a breach of the agreement on his part, if the contract was considered by the parties to be still in force, and to afford a measure of compensation for his services and liabilities.
In the end, by the judgment of the superior court, a receiver of the estate, pending the litigation, was appointed,' and such receiver was substituted as plaintiff in the place of the executors, who was authorized to appoint an attorney to represent him in the conduct of the litigations. Such result was produced by the alleged misconduct as well as insolvency of the exeeu tors, and of the misconduct of Martin in respect to the estate, and the application of the moneys received by him in the course of the litigation (see opinion of FeeedmAN, J., Ooolce v. Platt). These various proceedings have subjected the estate to large and unnecessary charges, delays and expenses.
It is quite true that after the substitution of Mr. Smith as receiver, in the place of the executors, Mr. Martin did render services as counsel upon the special employment of the receiver, and for such services he has been compensated by the receiver, but the legal proceedings, since the substitution of the receiver, have been conducted by Mr. Allan, the attorney selected by him, who has interposed a large claim for legal services, rendered by him in the actions and proceedings.
Had Mr. Martin been superseded or been prevented from rendering professional services in the action for causes, for which he was in no degree responsible, the case might be different; but, unfortunately for him, the proceedings and judgments of the superior court are wholly inconsistent with such conclusion.
*296 A party to a contract, claiming to have it decreed to be specifically performed, must in good faith and truly perform all the obligations imposed upon him by the terms of the contract,' and a failure on his part in any material point is of itself a sufficient ground for withholding equitable relief.
Agreements of the nature of the one we are now considering, between an attorney and his clients, were at one time disfavored by statute and the judgments of the courts. Now, if they are understaudingly and fairly made, they will be upheld. A late decision on this subject is Fowler against Callan, in the court of appeals. Fowler v. Callan, 102, N. Y., 395. 1 N. Y., State R., 1.
But they never will be decreed to be specifically performed, in the way herein demanded, if the attorney has failed to discharge the obligations which he has assumed.
An attorney should be held to a strict performance of his duties and obligations to a client- under agreements of this nature.
If the attorney in this case was justified in asking for and receiving so large a sum of money, during the progress of the litigations, for counsel fees and expenses incident to their prosecution, as Martin received from the subject of this litigation, how could the agreement, by which he was to receive one-half of the final recovery, be regarded in any other light than an improvident arrangement, and, as such, beyond the powers of the executors to make, and which shall not be upheld ?
If he was not entitled to receive this money, as he clearly was not under the agreement and the evidence, then the agreement as a measure of compensation must have been practically regarded as abandoned by the parties.
The effect of this conclusion is not at all weakened, in my judgment, by the fact that Martin procured from the executors in 1876 a consent, that all moneys which had been received by him from the Union Trust Company, the receiver in the action, should be applied by him to the payment of counsel fees and expenses of the suit. The needs of these executors were great and pressing, and, according to their statements, they signed as executors any papers Martin presented to them for execution.
The position of their attorney in the litigation, at its then stage, and his intimate relations with them, enabled him to exercise much influence over them, and in this instance, according to the papers, it was exercised adversely to their rights under the contract, and was efficient to obtain their acquiescence in a measure, which as executors they had no right or power to give.
They could not agree that such large sums of money, as had been obtained by Martin from the receiver in and previous to 1876, should be held by him for purposes so general and indefinite, as “ counsel fees ” and “ expenses ” of the litigation, when *297 by the contract he was himself bound to advance and pay them.
Besides Martin did not so apply these moneys. Emmett and Tracy, the counsel engaged, were obliged to wait for their pay for many years thereafter and were in the end paid by the receiver with the funds of the devisees.
Besides all .this, subsequent to his displacement as attorney, Martin did not perform what was required of him under the contract. He did not, and could not, render that skill and serv- • ice to winch he was obligated, and upon which, as the contract alleged, the amount of the recovery so much depended, and it was left to other attorneys and counsel to complete the work which in the end secured the fruits of the litigation.
In fact it was argued before me, on behalf of the plaintiff, that because Mr. Martin had lost the control and management of the litigation, and the advice of other counsel had prevailed with the receiver, the substituted plaintiff, in the principal action, as to the way in which the case should be presented to the court of appeals, upon the final argument, when the exceptions to the referee’s report were under consideration in that court, the recovery was in the end less than it should have been by several hundred thousand dollars. Whether or not that be so, it is not really necessary here' to decide; but it seems clear that Martin’s failure to manage and conduct to its final close the litigation in all its branches, as he was required to do by the contract, deprives the present plaintiff of the remedy he seeks in this action. And upon that ground as well as the others above mentioned, the plaintiff’s complaint must be dismissed with costs.